FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

NOV 1 4 2024

KEVIN P WEIMER, Clerk
Emily Ross Deputy Clerk

### IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF GEORGIA ATLANTA DIVISION

| | |
|---|---|
| BRAD ALBERT,<br>  Plaintiff,<br><br>V.<br><br>Fidelity Brokerage Services LLC<br><br><br><br>          Defendant. | Civil Action File No:<br><br>**1:24-CV- 5249**<br><br>JURY TRIAL DEMANDED |

## I.     INITIAL COMPLAINT

Plaintiff Bradley James Albert, *non-attorney,* files this Complaint against Defendants Fidelity Brokerage Services LLC (Fidelity) which alleges as follows:

## II.     EEOC 90 Day Letter

On 09/20/2024, the U.S. Equal Employment Opportunity Commission (EEOC) issued a Determination and Notice of Rights after Defendants continuous retaliation though till Claimant's Rebuttal was due 09/09/24. The EEOC stated "The EEOC will not proceed further with its investigation and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims

1

have no merit" (See attached Exhibit 80). Plaintiff was given 90 days to sue Defendant in Federal Court.

### III.    Introduction

Brad Albert (Plaintiff), non-attorney, brings this action under Title VII of the Civil Rights Act of 1964, Dodd-Frank Wall Street Reform and Consumer Protection Act, Age Discrimination in Employment Act (ADEA), FINRA Rules 2010, 4530, and (2111), Taxpayer First Act to correct the illegal discrimination program based off of race, sex, and age, and Plaintiff reported potential securities fraud and tax fraud issues and was met with retaliation by Defendant.

In Plaintiff's position with Fidelity Investments, employees are to receive automatic promotions without needing to apply for the promotions. Though Plaintiff was the *best qualified on Plaintiff's team* in Production, Quality, and Leadership, Plaintiff has *never* received the automatic promotions as others of different race, sex, and age and Plaintiff's quarterly bonuses had been lowered below average without cause. Fidelity management, Compliance, Human Resources (HR), and Corporate Legal decided to break its own "No Retaliation" and "No Bullying" policies and started an *endless campaign of retaliation to this day* against Plaintiff after Plaintiff reported to Defendant that Plaintiff had made a claim with the EEOC.

## I.    JURISDICTION AND VENUE

A. This is an action arising under the laws of the United States of America, in particular Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e-2(a) and § 2000e-3(a) for continued retaliation from a protected activity.

B. This Court has personal jurisdiction over this action, and the parties herein, arises under 28 U.S.C. §§ 1331 and 1337 because of the rights and obligations of the parties in this action arise out of Age Discrimination in Employment Act (ADEA) for continued retaliation from a protected activity.

C. This Court has personal jurisdiction over this action, and the parties herein, arises under 28 U.S.C. §§ 1331 and 1337 because of the rights and obligations of the parties in this action arise out of Dodd-Frank Wall Street Reform and Consumer Protection Act for continued retaliation from a protected activity.

D. This Court has personal jurisdiction over this action, and the parties herein, arises under 28 U.S.C. §§ 1331 and 1337 because the rights and obligations of the parties in this action arise out of 26 U.S. Code § 7206 after Defendant for decades has mailed out fraudulent IRS tax form 1099-R.

E. This is an action arising under the laws of the United States of America, in particular Dodd-Frank Wall Street Reform and Consumer Protection Act for continued retaliation from a protected activity.

F. The jurisdiction of this Court is invoked pursuant to the provisions of Title VII, 42 U.S.C. § 2000e-5(f)(3) and the general civil rights jurisdictional provisions of 28 U.S.C. § 1343(a)(4).

G. The supplemental jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1367 as it pertains to Plaintiff's state claims.

H. The Diversity Jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1332 as it pertains to Plaintiff's state claims because the parties are completely diverse in citizenship and the amount in controversy exceeds $75,000.00.

I. Pursuant to 28 U.S.C. § 1391(b)(2), venue is proper in that Fidelity Investments LLC conducts business in the Northern District of Georgia and where the events giving rise to the claim occurred.

J. Plaintiff at all times relevant hereto resides in Gordon County, State of Georgia.

K. This action arises under the laws and Constitution of the United States.

## II.    THE PARTIES

L. Brad Albert, Plaintiff, is an adult male citizen of the United States and

4

the State of Georgia.

M. Plaintiff was an employee of the Defendants as defined by Title VII of the Civil Rights Act of 1964.

N. Fidelity Brokerage Services LLC (Fidelity) is registered with the Georgia Secretary of State. Its principal place of business is located at 900 Salem Street, Smithfield, Rohde Island, 02917. It can be served with process through its Registered Agent on the Georgia's Secretary of State's website at: **CT Corporation System, 289 S Culver St, Lawrenceville, GA 30046-4805.**

O. At all relevant times Fidelity had continuously been an employer engaged in an industry affecting commerce under section 701(b), (g) and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g) and (h).

## III.   PRELIMINARY FACTS

Plaintiff was hired away from his prior Broker-Dealer by Fidelity Brokerage Services LLC (Fidelity) in February 2022, and Plaintiff was placed in my current role as a Wealth Management Service associate (WMS) in November of 2022.

Fidelity is part of a Fidelity investment conglomerate: Fidelity is a leader in 401k and pension plans, Fidelity owns and manages its own mutual funds used nationwide by

other investment companies and outside 401k plans, Fidelity is a leader in stock plan services, Bitcoin, an annuity provider, and provides individual/personal (retail) investing. For all its size and being an investment industry powerhouse, Fidelity is *not a publicly traded company*, Fidelity is owned by one individual. As you will see, Fidelity believes it can make its own rules, disregarding laws and investment securities regulations, including discriminating against and retaliating against its employees.

### 1. <u>WMS Mentorship</u>

Plaintiff started my Wealth Management Service Specialist (WMS) role in November 2022. After Training, new WMS representatives are assigned "Mentors" to teach them the updated web-based applications and help with learning Fidelity internal policies like setting the Out-of-Office on the Salesforce. Mentors are critical to Fidelity because of the large gaps of knowledge from basic onboarding training.

Plaintiff knew Fidelity was discriminating against Plaintiff when my Mentor quit, days into Plaintiff's training and Plaintiff's new manager, Sherry Edwards (Sherry), *refused to replace the mentor*. Fidelity was proud of its Diversity, Equity, and Inclusion (DEI) program and admitted to moving away from its prior "merit based" promotions. The other African Americans and Caucasian females were assigned mentors lasting without end dates. This caused Plaintiff to have significant gaps in "Fidelity's internal procedure knowledge". My prior experience in the investment industry is extensive so

Plaintiff knows about what needs to be done, but Plaintiff didn't know Fidelities policy and procedures. Fidelity admits in its 07/19/24 EEOC Response the mentorship is critical to train new WMS representatives "The leadership category also includes things such as **mentorship participation**, proactively coaching and **mentoring**…" (page 1).

Experiencing discrimination so early in my Fidelity career all Plaintiff could do is stay positive, work hard, and document.

## 2. <u>Retaliation after Reporting EEOC Complaint</u>

Plaintiff was eligible and best qualified for Fidelity's automatic promotions to Level 4 and Level 5 at Plaintiff's WMS(S) position. These promotion levels could have increased Plaintiff potential pay to over $50,000 yearly. Plaintiff was treated differently due to my race, sex, and age by Fidelity, higher quarterly bonuses and automatic promotions were given to those of different race, sex, and age with less production, lower quality and equal leadership than Plaintiff.

After reporting Plaintiff's clear discrimination and that Plaintiff had filed an EEOC claim. On the same day the EEOC claim was filed, the Plaintiff informed Fidelity of the EEOC claim. Fidelity then chose not to take corrective actions but decided to organize over different departments a retaliation plan that has continued for over a year by overworking and harassing Plaintiff. Fidelity refused to count Plaintiff's correct Production, Quality, and Leadership activities towards the automatic promotions or

quarterly bonuses, lying in Fidelity's coaching notes, quarterly reviews, and a formal

Expectations Memo that Plaintiff was not doing his job correctly. Fidelity had no problem

lying to the EEOC (under oath) about the reasons for Plaintiff's lower bonuses and not

receiving the automatic promotions and retaliating against Plaintiff for reporting potential

securities and tax fraud by Defendant against Defendant's customers.

### 3. Fidelity has been Removing Information from the Fidelity WMS Resource Portal and Plaintiff's Laptop to stop Plaintiff's Documentation for the EEOC investigation and Federal Court

Fidelity *had* written procedures requiring WMS representatives to make three

outbound calls for all Proactive cases and Reactive cases on its WMS Resource portal

_(Exhibits 7 and 8).

1. **Reactive cases:** comes from WMS representatives making cases after speaking with a customer or a branch partner (Fidelity salespeople) on the phone about an issue which the WMS rep needs to follow up on.
2. **Proactive cases:** there are cases in which the branch creates a case in Salesforce themselves and sends the case to WMS reps to follow up on (so the branch does not always have to call WMS).

Head of WMS, Michael Brown Head, on 12/13/23 said "productivity is, as you

may have mentioned, is calls, chats, [closed] cases and **outbound contacts** (Page 3 of

7)." calls are part of a WMS representative's Production score" (Page 3 of 7) (Exhibit 3

and 3a). This was important because later Fidelity decided to retaliation and set Plaintiff

up to fail because, *Plaintiff was still being required to meet my three outbound call requirements,* however, Fidelity permitted Plaintiff's teammates to all but abandon making their outbound calls in second quarter 2024 so they could take more inbound calls. **Fidelity then refused to count Plaintiff's outbound calls towards Plaintiff's quarterly production. Fidelity compared Plaintiff's inbound calls to Plaintiff's teammates so Fidelity could write Plaintiff up in the written in August Q2 2024 quarterly review (Exhibit 22i) as an "Opportunity to take more inbound calls". Fidelity used their fabricated "production problem" to then deny Plaintiff 100% to 200% bonus for all Plaintiff's work efforts and denied Plaintiff the earned automatic promotions**. When Plaintiff identified Fidelity was permitting my teammates to stop making the three required outbound calls, Plaintiff reported it to the Chairman's Line (a place Fidelity employees can report potential unethical or illegal activities to the company with a policy of no retaliation).

In response to my Chairman's Line concern, Fidelity decided to *remove* the written three outbound call requirements from the WMS Resource Portal and from Plaintiff's laptop. The Plaintiff sent Fidelity Compliance 9/10 Help Desk a confirmation TEAMs message and Compliance agreed the policy had been removed. Fortunately for the Plaintiff, Fidelity forgot to remove copies of Fidelity's three outbound call requirements from Plaintiff's Adobe Acrobat, so Plaintiff was able to retrieve the written policies. The Plaintiff then emailed the removed written outbound call policy and Compliance's

9

TEAMs message to Fidelity's Corporate Security (Exhibit 86a, 86b) (Exhibit 7, Exhibit 8).

### 3.  Recording ZOOM Meetings at Fidelity is Permitted on Website and by WMS Management

Fidelity made another incorrect statement in the July 19, 2024, EEOC Response on Footnote Page 4: "2 Fidelity does not record Zoom meetings and therefore is not aware of any such recording". Fidelity 9/10 Compliance has recently confirmed that Fidelity can on later replay see the WMS reps' entire computer and any additional window like Screen Sharing with our customers.

Fidelity's own computer page prior to every employee logging in each day clearly states, **"All access and use maybe monitored and recorded"** (Exhibit 11).

### 4.  Applicable Discrimination Case Law
### Jeter v. Roberts, 2024 U.S. App. LEXIS 3132 (11 th Cir. 2024).

Plaintiff can show that (1) Plaintiff engaged in protected activity; (2) Fidelity took adverse employment action against Plaintiff; and (3) there is a causal connection between the protected activity and the adverse action. Jeter v. Roberts, 2024 U.S. App. LEXIS 3132 (11 th Cir. 2024).

The Plaintiff can show that:

(1) Plaintiff engaged in protected activity:

    1.  Plaintiff was eligible and the best qualified for Fidelity's automatic promotions to Level 4 and Level 5 at my WMS position. Plaintiff was

treated differently and did not receive the automatic promotions and lower bonuses due to my race, sex, and age by Fidelity.

A. Fidelity did not provide Plaintiff with the same required mentorship training as other of different race, sex, age like WMS(S) Teammates received.

B. Fidelity refused to count Plaintiff's Leadership and Development activities for promotions and bonuses (significant pay increases up to $110,000 in Level 4 and Level 5 promotions and up to 200% or $8800 in quarterly bonus).

C. Plaintiff was the *only employee* on my team given more hurdles to achieve "Leadership" for promotion and bonus than the other WMS(S) teammates of different race, sex, and age.

(2) Fidelity took adverse employment action against Plaintiff. In two and a half years in Plaintiff's WMS(S) position:

1. Fidelity violated its one-on-one (1:1) "transparency" policy where managers tell employees what they individually need to do or change in order to receive the automatic promotions or the 100% - 200% bonuses.

2. On 10/31/23 Plaintiff was the *only employee* given more hurdles to achieve "Leadership" for automatic promotions and higher bonuses than the other WMS(S) teammates of different race, sex, age. *Even after* Plaintiff *completed the additional hurdles*, Fidelity still refused to give Plaintiff the automatic promotions and higher bonuses.

3. Plaintiff never received one of the automatic promotions with significant their pay increases there are other older white males on my team in the similar situation. Other WMS(S) teammates of different race, sex, age who have lower qualifications have received the automatic promotions multiple times.

4. Fidelity overworked Plaintiff compared to other WMS(S) teammates of different race, sex, age (Exhibit 69) (Exhibits 6a – 6g).

5. On 03/01/24 Fidelity created fake claims against Plaintiff like: Plaintiff has a bad attitude, Plaintiff did not fulfill Plaintiff's PULSE call monitoring responsibility, Plaintiff not having enough leadership activities, Plaintiff did not taking constructive feedback, requiring *only* Plaintiff to use emotional language (like frustration) in my work messages to teammates setting Plaintiff up to fail in Fidelity's EEOC Response, writing Plaintiff up for involuntary anxiety created hand and eye shaking, and stress smiling solely caused by Fidelity intentionally overworking Plaintiff then threatening Plaintiff's job with continuous new professionalism lies, and requested Plaintiff to create Plaintiff's own reason(s) to write myself up for

11

disciplinary reasons, and a new lies in a formal Expectations Memo write up on 04/08/24.

6. Since Plaintiff informed Fidelity of my EEOC complaint, Fidelity intentionally engaged in a relentless retaliation causing Plaintiff to start having nervous hand shaking, eye twitching, and nervous smiling to the point Plaintiff had to seek counseling.

7. *Fidelity then used my nervous reactions* to Fidelity's retaliations from 03/01/24 going forward to the 07/19/24 EEOC Response, Fidelity intentionally caused Plaintiff's nervous breakdown so Fidelity could tell the EEOC Plaintiff had a bad attitude, "behavior and professionalism" problems, and proclaim falsely "Fidelity does have reasonable concerns related to Mr. Albert's behavior and professionalism, and if those issues do not improve Fidelity will begin to formally address them" (Page 6 of 8).

8. Fidelity used its WMS managers, Compliance (9/10 Help Desk),  Corporate Legal, and Hurman Resources (HR) for almost a year to attempt to set Plaintiff up to fail with fake claims on my professionalism and misinformation which threatened Plaintiff's employment.

9. On 05/02/24 in a meeting with Head of HR John O'Brien, Mr. O'Brien said my 04/08/24 Expectations Memo-Albert was a formal write up.

10. After Fidelity submitted its 07/19/24 EEOC Response, Fidelity, in a surprise meeting, **removed all my "Leadership and Development" duties**, so Plaintiff has no chance to receive the automatic promotions nor even 100% bonuses.

(3) There is a causal connection between protected activity and adverse action:

1. My production (forced to overwork), work quality, Leadership and Development, and Plaintiff's helpful personality were better than the teammates of different race, sex, age who received the automatic promotions and higher bonuses. **There are no other metrics for automatic promotions and bonuses**. My Teammates who were African American and Caucasian females who had much lower Production, lower quality, and same or less amounts of leadership than Plaintiff received multiple automatic promotions past Plaintiff and the higher bonuses over 100%.

    A. Danielle (Danni) new Caucasian young female manager, while Bruse is on paternity leave till mid-September, on 06/20/24 said Plaintiff had a lot of leadership and the leadership idea Plaintiff had for training the new branch hires at Fidelity needed to be given to teammates who had less leadership than Plaintiff. But Plaintiff's idea was given to the individuals of different race, sex, and age who had been promoted past the Plaintiff.

12

B.  Head of WMS Michael Brown admitted automatic promotions and bonuses are completely discretionary leading to my discrimination Michael Brown 12/13/24 "there is no formula" for quarterly reviews to measure reps" (Page 3 of 7) (Exhibit 3).

C.  08/30/24 Michael Brown in a recorded ZOOM meeting, blamed Plaintiff for not getting alone with Plaintiff's managers and then transferred Plaintiff out of my team because Bruce was coming back from his paternity leave. After Plaintiff's first initial meeting with Plaintiff's current manager Fidelity refuses to follow its policies of manager one-on-one WMS representative bi-weekly meetings over performance, promotions, and quarterly reviews.

Jeter v. Roberts, 2024 U.S. App. LEXIS 3132 (11 th Cir. 2024).

## 5. <u>Case Complexity</u>

Unfortunately, the Plaintiff was unable to get an attorney to represent Plaintiff in this case. The race, sex, and discrimination will hopefully not be to overly complex using the case law above and there is no question of facts with all Plaintiff's audio recordings. However, Plaintiff may request a Court Appointed Attorney after conferring with Defendant due to the apparent securities and tax fraud elements of this case and if this Court agrees the facts of the case warrant class action status. Also, Defendant has been caught removing policies and admitting Defendant can change their report results so accuracy in discovery may become an issue warranting an attorney's guidance.

Plaintiff reminds the Court that the Federal Civil Procedures are vague and some unwritten thus "Court affords pro se parties' substantial leeway,[2] and construes all filings from pro se litigants more leniently, holding them "to less stringent standards than formal

pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citations and internal quotation marks omitted); *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998). Plaintiff, being forced to represent himself against his will, needs clear explanations and time to correct procedural mistakes.

## 6. CONCLUSION

Fidelity's 07/19/24 EEOC Response contained eight pages of testimonial lies and misstatements to the EEOC that were retaliatory towards Plaintiff for making an EEOC discrimination complaint on 09/19/23 and reporting it to Fidelity. Fidelity is too wealthy of a company and has no concern about an economic slap on the wrist. For over a year, Fidelity organized a multi-department retaliation campaign using Plaintiff as a punching bag of personal and professional attacks and then Fidelity kept overworking Plaintiff compared to others of different race, sex and age. Plaintiff even offered to enter the Fidelity "circle of trust" by watching their management video (F-Diddy video) to end all the retaliation and denial of promotion, but Fidelity declined.

With Plaintiff's ample Leadership and Development, Team participation, quality of work, high level of production, industry knowledge, good attitude, and the ability to take and implement constructive feedback, and Plaintiff completed all the additional hurdles Fidelity only gave to Plaintiff, Plaintiff should have been promoted to Level 5 by now and had much higher bonuses. Plaintiff was more qualified than others of different race, sex, and age. Resume to resume Plaintiff beat both everyone on my team and qualified

14

for the automatic promotions and 100% to 200% bonuses *But-for* my race, sex, and age.

Fidelity needs to be held accountable for equality in the workplace for *every* race, gender,

and age of employee.

## 7. CAUSES OF ACTION

There may be additional Claims Plaintiff may need to add as discovery proceeds
including class action status for the race, sex, and age discrimination.

### Count I
### Title VII of the Civil Rights Act of 1964

Plaintiff repeats and re-alleges the allegations set forth in Paragraphs above and

incorporates the same herein by reference.

Defendants violated Plaintiff's rights under Title VII of the Civil Rights Act of 1964

by denying earned automatic promotions and equal or greater bonus based on Plaintiff's

race, sex, and age. After reporting unquestioned discrimination to the EEOC, Defendants

then started a blatant retaliation campaign that continues to this day.

### Count II
### Dodd-Frank Wall Street Reform and Consumer Protection Act

Plaintiff repeats and re-alleges the allegations set forth in Paragraphs above and

incorporates the same herein by reference.

15

After reporting apparent securities fraud against Defendant's senior customers, Defendant started retaliating against Plaintiff.

## COUNT III
### Taxpayer First Act

Plaintiff repeats and re-alleges the allegations set forth in Paragraphs above and incorporates the same herein by reference.

After reporting apparent tax fraud against Defendant's senior customers, Defendant started retaliating against Plaintiff.

## COUNT IV
### Age Discrimination in Employment Act (ADEA)

Plaintiff repeats and re-alleges the allegations set forth in Paragraphs above and incorporates the same herein by reference.

Defendants violated Plaintiff's rights under the Age Discrimination in Employment Act (ADEA) by denying earned automatic promotions and equal or greater bonus based on Plaintiff's age. After reporting the unquestioned discrimination to the EEOC, Defendants then started a blatant retaliation campaign that continues to this day.

## Count V
### Breach of Contract – O.C.G.A. § 13-3-1

Plaintiff repeats and re-alleges the allegations set forth in Paragraphs above and incorporates the same herein by reference.

Defendants have a "No Retaliation" and "No Bulling" Policy which Fidelity violated repeatedly after Plaintiff reported to Defendant Plaintiff made and EEOC complaint based off Fidelity's unquestioned race, sex, and age discrimination.

## COUNT V

### Punitive Damages

Plaintiff repeats and re-alleges the allegations set forth in paragraphs above and incorporates the same herein by reference.

Defendants continued to this day, impugned conduct was willful, wanton, oppressive, and demonstrated that entire want of care which raises the presumption of a conscious indifference to consequences. For this reason, Plaintiff avers that defendant is liable to plaintiff for punitive damages to punish, penalize, and deter defendant from similar conduct in the future.

**WHEREFORE**, Plaintiff demands judgment and prays as follows:
  a) That process issue and Defendants be served as provided by law;
  b) That Plaintiff have a trial by jury;
  c) That Plaintiff recover damages in an amount to be determined by the enlightened conscience of a fair and impartial jury;
  d) That all costs of this action be cast against Defendants; and
  e) That Plaintiff be granted any and all such further relief as this Court may deem just

17

and proper.

This 31st day of October 2024.

Respectfully submitted,

Brad Albert

Albert.bradley@att.net

316 E. Line St.

Calhoun, Ga 30701

762-204-8588