**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

Bradley Albert,

Plaintiff,

Case No. 1:24-cv-5249-MLB

v.

Fidelity Brokerage Services, LLC,

Defendant.

________________________________/

**OPINION & ORDER**

Pro se Plaintiff Bradley Albert sues Defendant Fidelity Brokerage Services, LLC, for discrimination and retaliation based on his sex, race, and age. (Dkt. 22.) Defendant moves to dismiss and for sanctions. (Dkts. 24, 26.) Magistrate Judge Larkins issued a report and recommendation ("R&R"), saying the Court should grant in part and deny in part Defendant's motion to dismiss and deny Defendant's motion for sanctions. (Dkt. 32.) Defendant objects. (Dkt. 36.) The Court adopts the R&R.

## I. Background

Defendant is an investing and financial services company. (Dkt. 32 at 5.) Defendant hired Plaintiff, a 53-year old white male, in February 2022 to work as a Wealth Management Services representative ("WMS rep"). (Dkt. 22 ¶¶ 5, 82, 93.) Defendant pays WMS reps according to a tiered schedule (Levels 3 through 5) with people in different tiers earning significantly different pay and bonuses. (*Id.* ¶¶ 7, 11.) Defendant evaluates its reps based on their leadership (participation in group activities), production (taking calls and resolving cases for customers), and quality (the rep's accuracy). (*Id.* ¶¶ 11–14.) Based on those evaluations, WMS reps receive "automatic monetary promotions"—essentially raises—and higher quarterly bonuses. (*Id.* ¶¶ 11, 16.)[1] Defendant also automatically awards its reps corporate stock on an annual basis. (*Id.* ¶ 19.)

[1] Plaintiff's allegations contradict themselves. He asserts promotions are "automatic," but then (in the same paragraph) alleges Fidelity evaluates WMS reps "to determine" who receives the automatic promotions. (Dkt. 22 ¶ 11.) The Court, as it must on a motion to dismiss, construes all allegations in Plaintiff's favor. *Rivell v. Private Health Care Sys., Inc.*, 520 F.3d 1308, 1309 (11th Cir. 2008).

Defendant typically assigns a mentor to each new WMS rep. (*Id.* ¶ 22.) The mentors help reps understand Defendant's internal policies and software. (*Id.*) Defendant assigned mentors to Plaintiff's peers—who allegedly have a different race, sex, and age than Plaintiff—but did not provide one to Plaintiff. (*Id.* ¶¶ 22, 26.) For months, Plaintiff asked for a mentor, but Defendant refused. (*Id.* ¶¶ 24–25.) Defendant's failure to provide Plaintiff a mentor negatively affected Plaintiff's job performance. (*Id.* ¶ 26.)

Despite outperforming his peers and having higher quality and production scores, Defendant has never promoted Plaintiff. (*Id.* ¶¶ 29, 31, 33.) But Plaintiff's peers, Amy Lange (female, white, and under 40) and Bridget Ghant (female and black) were promoted. (*Id.* ¶¶ 22, 31.) Defendant never told Plaintiff why it would not promote him or pay him "higher bonuses." (*Id.* ¶¶ 30, 33.)

Plaintiff filed an EEOC complaint on September 19, 2023, alleging race, sex, and age discrimination. (*Id.* ¶ 34.) On October 31, Plaintiff met with his supervisor and his manager. (*Id.* ¶ 37.) They gave Plaintiff "additional ambiguous . . . hurdles to meet in order to receive the automatic monetary promotions and higher bonuses." (*Id.*) Defendant

told Plaintiff he needed to display a positive attitude, receive positive recognition from customers or branch representatives, and be proactive. (*Id.* ¶ 38.) Despite Plaintiff meeting those goals, Defendant still did not increase his pay or bonus. (*Id.* ¶ 39.) Defendant also pushed Plaintiff to "50 cases of production"—whatever that means—while other WMS reps were only required to worked "10 to 25 cases of production." (*Id.* ¶ 42.) Plaintiff says this requirement overworked him. (*Id.* ¶ 43.)

Plaintiff also alleges various individuals retaliated against him after he submitted his EEOC complaint. (*Id.* ¶¶ 44–62.) First, the "compliance help desk rep" reported possible compliance issues against Plaintiff to his supervisor. (*Id.* ¶ 45.) A supervisor also wrote in his quarterly review that Plaintiff could "take more inbound calls" than he was taking, which reduced his bonus and prevented his "monetary promotion." (*Id.* ¶ 49.) Defendant also changed a call policy to make it seem Plaintiff was taking less calls than required for promotions or bonuses. (*Id.* ¶¶ 48, 50–52.) Additionally, Plaintiff's supervisor created "notes, quarterly reviews, and an [April 8, 2024] 'Expectations Memo'" to "discipline" Plaintiff. (*Id.* ¶ 54.) Finally, Plaintiff was transferred to "a

less favorable position" and did not receive stock compensation. (*Id.* ¶¶ 58, 62.)

Plaintiff filed his initial complaint against Defendant in November 2024. (Dkt. 1.) It was a shotgun pleading, and the Court ordered him to file an amended complaint. (Dkt. 19.) He did that but also moved to have the Court recuse itself. (Dkts. 22, 23). In the latter, he claimed the Court threatened sanctions and told the U.S. Postal Service and U.S. Marshals to hold his filings. (Dkt. 23.) The Court denied that motion. (Dkt. 41.)

In his amended complaint, Plaintiff claims Defendant discriminated and retaliated against him in violation of Title VII and the Age Discrimination in Employment Act. (Dkt. 22 ¶¶ 82–103.) He claims Defendant (1) discriminated against him because of his race, sex, and age and (2) retaliated against him after he filed his EEOC complaint. (*Id.*) Defendant moved to dismiss, arguing the complaint was a shotgun pleading and failed to state sufficient facts to support Plaintiff's claims. (Dkt. 24.) It also moved for sanctions because it was "unfairly forced to incur attorneys' fees" in responding to Plaintiff's motion for recusal. (Dkt. 26.)

The Magistrate Judge recommends that this Court dismiss Plaintiff's Title VII race discrimination claim, saying the fact Amy Lange (the white co-worker) received benefits Plaintiff says Defendant denied him precludes his Title VII race discrimination claim. (Dkt. 32 at 19–20.)[2] He says Plaintiff should be permitted to proceeds on his age and sex discrimination claims. (*See generally* Dkt. 32.) The Magistrate Judge also recommends the Court deny Defendant's motion for sanctions because Defendant did not have to respond to Plaintiff's motion for recusal, so it did not have to incur those attorneys' fees. (*Id.* at 25.) The Magistrate Judge also denied sanctions based on Plaintiff's compliance with the Court's instructions in amending his complaint. (*Id.*) Defendant objects to the R&R. (Dkt. 36.)

## II. Standards of Review

### A. R&R

28 U.S.C. § 636(b)(1) requires district courts to "make a de novo determination of those portions of [an R&R] to which objection is made."

[2] Plaintiff does not object to the recommendation that the Court dismiss his race discrimination claim. Finding no plain error in that conclusion, the Court adopts it.

Any such objection "must specifically identify the portions of the [R&R] to which objection is made and the specific basis for objection." *McCullars v. Comm'r, SSA*, 825 F. App'x 685, 694 (11th Cir. 2020)[3]; *see United States v. Schultz*, 565 F.3d 1353, 1360 (11th Cir. 2009) ("[A] party that wishes to preserve its objection must clearly advise the district court and pinpoint the specific findings that the party disagrees with."). "Frivolous, conclusive, or general objections need not be considered by the district court." *Marsden v. Moore*, 847 F.2d 1536, 1548 (11th Cir. 1988). Ultimately, a district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

**B. Motion to Dismiss**

"Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 667–78

[3] The Court recognizes *McCullars* is unpublished and not binding. The Court cites it and other unpublished cases nevertheless as instructive. *See Searcy v. R.J. Reynolds Tobacco Co.*, 902 F.3d 1342, 1355 n.5 (11th Cir. 2018) ("Unpublished cases do not constitute binding authority and may be relied on only to the extent they are persuasive.").

(2009). A court may dismiss a pleading for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" *Iqbal*, 556 U.S. at 678. At the stage of a motion to dismiss, "all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff." *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1273 n.1 (11th Cir. 1999).

## III. Discussion

Defendant contends the Magistrate Judge erred in (1) declining to take judicial notice of the age of Plaintiff's comparator, Bridget Ghant; (2) finding sufficient allegations of adverse employment actions and a causal nexus for Plaintiff's sex and age discrimination claims; (3) finding Plaintiff's retaliation allegations sufficient to constitute adverse employment actions; and (4) denying its motion for sanctions.

### A. Judicial Notice

In asserting his claims, Plaintiff compares himself to Bridget Ghant (a black and female rep), saying Defendant treated her better because of her sex and race. (Dkt. 22 ¶¶ 29, 85.) In moving to dismiss Plaintiff's

age discrimination claim, Defendant asked the Magistrate Judge to take judicial notice of Ghant's FINRA profile, which Defendant claims shows she is older than Plaintiff. (Dkt. 24-1 at 9 n.3).[4] The Magistrate Judge denied that request, finding it inappropriate given the Court's obligation to accept Plaintiff's factual allegations as true. (Dkt. 32 at 19.)

The Court overrules Defendant's objection. A court may take judicial notice of certain facts in considering a motion to dismiss, including public records that are "not subject to reasonable dispute" because they are "capable of accurate and ready determination by resort to sources whose accuracy could not reasonably be questioned." Fed. R. Evid. 201(b); *Horne v. Potter*, 392 F. App'x 800, 802 (11th Cir. 2010). In support of its argument that the Court should take judicial notice of Ghant's FINRA profile, Defendant cites cases in which other courts took judicial notice of various FINRA records. But in those cases, the Court used the records to take judicial notice of when entities were registered and similarly undisputable facts—facts established merely by the FINRA filings. *See Prodanova v. H.C. Wainwright & Co., LLC*, 2018 WL

---

[4] The Court references page numbers from CM/ECF.

8017791, at *4 (C.D. Cal. Dec. 11, 2018) (judicial notice of FINRA webpages to establish entity's FINRA registration, FINRA's role in regulating broker-dealers, and the process FINRA follows to adopt rules); *Tier Reit, Inc. v. Uvest Fin. Servs. Grp. Inc.*, 2016 WL 4039163, at *5 (N.D. Tex. July 28, 2016) (judicial notice of FINRA BrokerCheck report to establish termination of entity's registration); *Wilkov v. Ameriprise Fin. Servs., Inc.*, 753 F. App'x 44, 46 (2d Cir. 2018) (judicial notice of FINRA records to show when party's affiliation with registered entity ended). But Defendant asks the Court to go beyond that and take judicial notice of biographical information about a specific person in a FINRA filing. Defendant cites no case suggesting such information is beyond reasonable dispute, and the Court has found none. The Magistrate Judge was correct in refusing to take judicial notice of Ghant's FINRA profile.[5]

---

[5] Defendant seeks to establish Ghant's age through a statement in her FINRA profile that she passed a licensing examination in 2002. This doesn't prove she is 54. Maybe she passed at 18 and is now 42. Maybe there's a different interpretation, but that's why judicial notice is inappropriate.

### B. Age and Sex Discrimination and Retaliation Claims

Title VII prohibits an employer from discriminating against an individual "because of [the] individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a). The ADEA similarly forbids employment discrimination "because of [an] individual's age." 29 U.S.C. § 623(a)(1). Both Title VII and the ADEA also prohibit an employer from retaliating against an employee for opposing or filing a charge of discrimination. *See* 42 U.S.C. § 2000e-3(a) (Title VII); 29 U.S.C. § 623(d) (ADEA). Plaintiff asserts claims for sex discrimination and retaliation in violation of Title VII and age discrimination and retaliation in violation of the ADEA. The Magistrate Judge recommends denying Defendant's motion to dismiss those claims.

#### 1. Sex and Age Discrimination

A claim for racial discrimination survives dismissal when well-pleaded factual allegations plausibly suggest a plaintiff suffered adverse employment action due to intentional racial discrimination. *Henderson v. City of Birmingham*, 826 F. App'x 736, 741 (11th Cir. 2020). A plaintiff may do that by plausibly alleging the *prima facie* elements of racial discrimination established by *McDonnell Douglas Corp. v. Green*,

411 U.S. 792 (1973): (1) he is a member of a protected class; (2) he was qualified for the position; (3) he suffered an adverse employment action; and (4) he was treated less favorably than a similarly-situated individual outside of his protected class. *Arafat v. School Bd. of Broward Cnty.*, 549 F. App'x 872, 874 (11th Cir. 2013).[6] Likewise, a plaintiff may state an ADEA disparate treatment claim by plausibly alleging (1) he was a member of the protected age group; (2) he was subjected to adverse employment action; (3) he was qualified to do the job; and (4) he was treated less favorably than a similarly-situated individual outside the protected age group. *Id.*; *Snyder v. Delta Air Lines, Inc.*, 2019 WL 13275402, at *6 (N.D. Ga. Apr. 17, 2019). Even if a plaintiff does not plead a prima facie case to survive dismissal, "the complaint must satisfy the plausible on its face standard, and the allegations must be sufficient to raise a right to relief above the speculative level." *Saint-Cyr v. Walgreen Co.*, 2023 WL 6785074, at *1 (11th Cir. Oct. 13, 2023) (cleaned

---

[6] The Court again emphasizes a plaintiff's discrimination claim *may*, but need not, allege the prima facie elements to survive dismissal. *Tynes v. Fla. Dep't of Juv. Just.*, 88 F.4th 939, 946 (11th Cir. 2023); *see also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510 (2002) ("The prima facie case under *McDonnell Douglas*, however, is an evidentiary standard, not a pleading requirement.").

up) (citing *Edwards v. Prime, Inc.*, 602 F.3d 1276, 1300 (11th Cir. 2010); *see also Arafat*, 549 F. App'x at 874–75 (applying Rule 12(b)(6) to Title VII and ADEA discrimination claims).

Defendant objects to the Magistrate Judge's conclusion that the complaint plausibly alleged both adverse employment action and the requisite causal connection. (Dkt. 36 at 14–18.)

**a) Adverse Employment Action**

A plaintiff suffers an employment adverse action—*i.e.*, is "discriminated against"—when an employer "treats a person worse because of sex or other protected trait." *Muldrow v. City of St. Loius, Mo.*, 601 U.S. 346, 354 (2024) (cleaned up). A plaintiff must allege "some harm respecting an identifiable term or condition of employment." *Id.* at 354–55. A plaintiff, however, need not allege the adverse employment action was "materially adverse" or caused "significant harm." *Id.* at 357. The Magistrate Judge concluded Plaintiff's allegations that Defendant refused to increase his salary and bonuses and refused to assign him a mentor "easily [met] the definition of adverse action set out in *Muldrow*." (Dkt. 32 at 18.)

Defendant objects, making mostly the same arguments it did before the Magistrate Judge. First, it contends its failure to provide Plaintiff a mentor "does not amount to a 'disadvantageous change in an employment term or condition' attributable to [Defendant.]" (Dkt. 36 at 15 (citing *Muldrow*, 601 U.S. at 354).)[7] But Plaintiff alleges mentors are "critical" to the development of new WMS reps, including by teaching new reps how to use the company's current software, explaining its internal policies, and filling in "large gaps" that remain after a rep's initial training. (Dkt. 22 ¶ 22.) He also asserts that Defendant's failure to provide him a mentor left him with "significant gaps" in his understanding of the company's policies. (*Id.* ¶ 28.) The denial of routine

[7] Defendant's motion to dismiss relies, in part, on facts from Plaintiff's initial complaint. (*See* Dkt. 36 at 14 (citing Plaintiff's initial complaint).) The Court does not consider that argument because "an amended pleading supersedes the former pleading; the original pleading is abandoned by the amendment, and is no longer a part of the pleader's averments against his adversary." *Pintado v. Miami-Dade Hous. Agency*, 501 F.3d 1241, 1243 (11th Cir. 2007). Defendant also contends Plaintiff's discrimination claim must fail because he admits he was assigned an "unhelpful" mentor. (Dkt. 36 at 14.) The portion of the complaint it cites alleges Plaintiff received a mentor only *after* he filed an EEOC complaint. (Dkt. 22 ¶¶ 24–25.) Plaintiff, however, bases his discrimination claim on Defendant's initial failure to assign him any mentor. (*Id.* ¶ 82.)

and essential training provided others constitutes "harm respecting an identifiable term or condition of employment." *Muldrow*, 601 U.S. at 355.

Second, Defendant argues any alleged failure to pay Plaintiff a higher salary or bonus is not actionable under *Muldrow* because Plaintiff's stagnant pay does not constitute a "change" in his employment term or condition. (Dkt. 36 at 15.) That argument misses an essential part of Plaintiff's allegation—that Defendant withheld from him automatic raises and bonuses to which he was entitled. Plaintiff alleges he was the "best qualified" of all WMS reps at his pay level for "automatic [salary] promotions and higher bonuses" because he had the "highest" production numbers. (Dkt. 22 ¶ 29.) Perhaps recognizing this, Defendant argues Plaintiff has not alleged "specific facts showing" he was entitled to the pay increases (Dkt. 36 at 15–16), but the Court disagrees. Paragraph 29 of the complaint includes those factual allegations—saying he was the "best qualified" WMS rep of all his peers for "automatic promotions and higher bonuses;" that each month he had the most inbound calls, outbound calls, and cases closed on WMS Team 27; that he had the highest "quality scores" on the team; that he participated in all leadership opportunities; and that Defendant denied him the promotions

and bonuses while giving them to the people he outperformed. (Dkt. 22 ¶ 29.) The Court overrules Defendant's objection.[8]

#### b) Causal Nexus

Some courts have dismissed discrimination claim where a plaintiff fails to allege a "causal connection" or "relationship" between an employer's discriminatory conduct and a plaintiff's protected characteristic. *See Boyd v. Premier Outdoor USA, LLC*, 2025 WL 4071402, at *4 (M.D. Fla. Aug. 7, 2025); *Kelley v. Buttigieg*, 2024 WL 5717952, at *6 (N.D. Ga. Feb. 12, 2024). Defendant argued dismissal was required because the complaint is "bereft of factual content that connects Albert's age or gender to any decision relating to a promotion, increase in compensation, or other award." (Dkt. 24-1 at 19 (citing *Kelley*, 2024 WL 5717952, at *15).) The Magistrate Judge disagreed, finding Plaintiff sufficiently asserted a causal connection by identifying two comparators

[8] In its objections, Defendant also "expressly preserves [an] argument that the ADEA is governed by a more rigorous standard than Title VII" because the Eleventh Circuit has not yet applied *Muldrow*—which concerned a Title VII discrimination claim—to an ADEA claim. (Dkt. 36 at 15 n.11.) Though the Court has reason to believe Title VII and the ADEA apply the same standard, *Doe v. Dekalb Cnty. Sch. Dist.*, 145 F.3d 1441, 1448 (11th Cir. 1998), it offers no opinion as to whether this footnote constitutes a valid objection to preserve an argument.

outside Plaintiff's age and sex—Lange and Ghant—to whom Defendant provided mentors and automatic salary and bonus increases despite those employees being less qualified. (Dkt. 32 at 19.)

Absent direct evidence of discrimination, a plaintiff can allege causation by identifying comparators outside his or her protected class to whom the defendant provided preferential treatment. *See Lewis v. City of Union City*, 918 F.3d 1213, 1215 (11th Cir. 2019). Defendant does not—and cannot—object to the application of that law to the facts here but objects to the Magistrate Judge's conclusion that Plaintiff has sufficiently done so. It cites the Magistrate Judge's prior order in *Kelley v. Buttigieg*, 2024 WL 5717952 (N.D. Ga. Feb. 12, 2024), and insists the Magistrate Judge erred in this case "by crediting [Plaintiff's] unvarnished legal conclusions" as to causation. (Dkt. 36 at 16–17.) It also contends Plaintiff "did not sufficiently allege that he was better qualified than his comparators." (*Id.* at 17.)

Again, the Court disagrees. Plaintiff provides facts to support his contention that he was better qualified than Lange and Ghant: his better production numbers month after month, his higher quality scores, and equal leadership opportunity scores. (Dkt. 22 ¶ 29.) The Magistrate

Judge's order in *Kelley* was not before this Court, but the order includes nothing to suggest the plaintiff in that case included allegations like Plaintiff's claims that he was the superior employee but watched other identifiable employees—outside his protected class—receive more favorable treatment. Indeed, it does not appear the plaintiff in that case compared her performance to the performance of any peers. And importantly, the court in *Kelley* noted the complaint lacked allegations about a similarly situated comparator, suggesting the plaintiff's discrimination claim might have survived had she done so. 2024 WL 5717952, at *5.

For these reasons, the Court overrules Defendant's objections and adopts the Magistrate Judge recommendation that it deny Defendant's motion to dismiss Plaintiff's sex and age discrimination claims.

### 2. Retaliation

To state a claim for retaliation under Title VII and the ADEA, a plaintiff must allege (1) he participated in a statutorily protected activity, (2) he suffered an adverse employment action serious enough that it "well might have dissuaded a reasonable worker from" engaging in the statutorily protected activity, and (3) a causal connection between the

protected activity and the adverse action. *Burlington Northern and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006); *Arafat*, 549 F. App'x at 874; *Litman v. Sec'y of the Navy*, 703 F. App'x 766, 770 (11th Cir. 2017).

In moving to dismiss, Defendant argued Plaintiff's retaliation claims fail because (1) some of the allegedly retaliatory actions occurred before Plaintiff engaged in protected activity, (2) Plaintiff failed to allege an adverse employment action, and (3) Plaintiff failed to allege a causal connection. (Dkt. 24-1 at 20–25.) The Magistrate Judge found Plaintiff's retaliation claims sufficient because Defendant's actions—including imposing additional work requirements, subjecting him to unwarranted disciplinary actions, removing him from leadership duties, denying him stock compensation, and transferring him to a less favorable position—constituted adverse employment actions. (Dkt. 32 at 20.) The Magistrate Judge also found the complaint sufficiently alleged a causal connection when it asserted the adverse employment actions began shortly after Plaintiff filed his EEOC complaint. (*Id.* at 21.)

Defendant objects only to the Magistrate Judge's first conclusion, arguing none of the actions it allegedly took were serious enough to constitute adverse employment action. (Dkt. 36 at 18–21.) Defendant,

for example, says the "disciplinary memorandum" it addressed to Plaintiff "is not actionable under Circuit precedent" because "memoranda of reprimand or counseling that amount to no more than a mere scolding . . . do not rise to the level of adverse employment actions sufficient to satisfy the requirements of Title VII." (*Id.* at 19 (citing *Barnett v. Athens Reg'l Med. Ctr.*, 550 F. App'x 711, 713 (11th Cir. 2013).)[9] But Plaintiff alleges the memo he received was a "formal write-up." (Dkt. 22 ¶ 55.) Labels like "disciplinary" or "formal" support the Court's conclusion that the memo—in combination with the other circumstances—might dissuade a reasonable worker from making a claim of discrimination. That's because Plaintiff claims Defendant created the memo just months after he made his EEOC complaint and included false information about issues Plaintiff raised. (*Id.*) Perhaps standing alone, this memorandum would not be enough. But, in the context of Plaintiff's other allegations about the way Defendant responded to his EEOC complaint, the Court

[9] Strangely, Defendant cites the Magistrate Judge's R&R in support of facts, rather than Plaintiff's complaint. (*See, e.g., Dkt.* 36 at 14 (citing Dkt. 32 at 11 for discussion of "disciplinary memorandum" rather than Dkt. 22 ¶ 55 which includes Plaintiff's allegation of "formal write up.").) The complaint controls and by ignoring it, Defendant fails to engage properly.

agrees with the Magistrate Judge's conclusion that the memo could serve (at least in part) as the basis for Plaintiff's retaliation claims. *See Glass v. Supreme Beverage Co.*, 2014 WL 2006117, at *12 (N.D Ala. 2014) (observing "disciplinary write-ups are materially adverse employment actions" in the context of an employment retaliation claim).

Defendant attacks Plaintiff's allegation that Defendant overworked him arguing Plaintiff worked harder because he "felt he needed to increase his 'Production' metrics . . . to better compete with his peers." (Dkt. 36 at 20.) Plaintiff did not allege that in his complaint. He alleges that, after he filed the EEOC complaint, Defendant "push[ed] Plaintiff" to handle 50 cases while his counterparts handled only 10 to 25 cases. (Dkt. 22. ¶¶ 34, 42.) A sudden increase in workload could dissuade a reasonable person from complaining about his or her treatment.

Defendant does not dispute that the denial of earned stock would constitute adverse action. But it says the complaint lacks any allegation Plaintiff "was entitled to stock compensation," so the denial of any stock could not constitute adverse employment. (Dkt. 36 at 21.) But the complaint alleges "WMS [reps] . . . automatically receive valuable

corporate stock annually." (Dkt. 22 ¶ 19.) The Court must accept that allegation.

Finally, Defendant says Plaintiff's retaliation claim based on an alleged transfer to a less favorable position should fail because Plaintiff "did not allege that his new role pays less than his prior role." (Dkt. 26 at 20.) The Court is not persuaded because Defendant cites no authority holding a plaintiff claiming retaliation based on a transfer of employment must also allege his or her compensation was negatively affected. Defendant also urges the Court to consider facts not in Plaintiff's complaint by injecting that Plaintiff "retains the same position but on a different team" and thus suffered no adverse employment action. (*Id.*) Taken as true, Plaintiff's allegation that he was transferred to a less favorable position is a sufficient basis for a retaliation claim.

The Court overrules Defendant's objection, adopts the Magistrate Judge recommendation, and denies Defendant's motion to dismiss Plaintiff's retaliation claims.

### C. Motion for Sanctions

A court may sanction a party where he or she unreasonably or vexatiously multiplies the proceedings in a case. 28 U.S.C. § 1927. A

court's inherent authority to control the proceedings before it includes the authority to impose "reasonable and appropriate sanctions" against a party, including a pro se plaintiff. *Martin v. Automobili Lamborghini Exclusive, Inc.*, 307 F.3d 1332, 1335 (11th Cir. 2002); *Smith v. Goldberg*, 2021 WL 1037859, at *2 (N.D. Ga. Mar. 18, 2021).

Defendant requested to be compensated by Plaintiff for attorneys' fees it incurred in responding to his motion for recusal. (Dkt. 26-1 at 11.) It says the Court should sanction Plaintiff for his "unacceptable" motion "to deter future filings of this kind and to compensate [Defendant] for the costs of responding" to the motion for recusal. (*Id.* at 8.) The Magistrate Judge disagreed because Defendant did not have to respond to Plaintiff's recusal motion. (Dkt. 32 at 25.)

Defendant objects, arguing the Local Rules required it to respond. (Dkt. 36 at 22.) Plaintiff has displayed less-than-admirable conduct but the Court does not award sanctions for now. Local Rule 7.1 states that the failure to respond to a motion indicates a party does not oppose the motion. But the Court cannot see how Defendant might have been prejudiced by that implication on such a frivolous recusal motion. *See Labas Ventures, LLC v. Butterfly Agency, LLC*, 2023 WL 11967353, at *3

(N.D. Ga. Feb. 7, 2023) (citation omitted) ("[A]n unopposed motion does not mean that the moving party automatically prevails; rather, the Court is still considered to consider the merits of the motion."). The Court agrees with the Magistrate Judge that Defendant did not have to incur the attorneys' fees it requests.

The Court cautions Plaintiff that its decision to deny sanctions was a close call. The Court adopts the portion of the R&R issuing a final warning to Plaintiff and inserts it here:

> the [Court] warns Plaintiff that any additional frivolous filings, particularly filings that require a response from Defendant or otherwise cause Defendant to unnecessarily incur attorney's fees, WILL result in a recommendation that Plaintiff be required to reimburse Defendant in the amount of the fees incurred, in addition to the fees and other expenses incurred seeking sanctions, and MAY result in a recommendation that this case be dismissed with prejudice.

If Plaintiff continues to engage in obstreperous conduct, the Court will award Defendant its attorneys' fees responding to those items and will reconsider its decision not to award those fees here.

## IV. Conclusion

The Court **OVERRULES** Defendant's objections (Dkt. 36), **ADOPTS** the Magistrate Judge's Non-Final Report and Recommendation (Dkt. 32), and **GRANTS IN PART AND DENIES IN**

**PART** Defendant's Motion to Dismiss (Dkt. 24). Specifically, the Court dismisses Plaintiff's race discrimination claim, but all other claims survive. The Court **DENIES** Defendant's Motion for Sanctions (Dkt. 26).

**SO ORDERED** this 14th day of September, 2026.

MICHAEL L. BROWN
UNITED STATES DISTRICT JUDGE